**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **SOUTHERN TRUST INSURANCE COMPANY,**<br><br>    *Petitioner,*<br><br>**v.**<br><br>**GUIDEWIRE SOFTWARE, INC.,**<br><br>    *Respondent.* | **CIVIL ACTION NO.**<br>**5:20-cv-00327-TES** |

## ORDER GRANTING MOTION TO COMPEL ARBITRATION

Southern Trust Insurance Company ("STIC") and Guidewire Software, Inc.

("Guidewire") entered into three contracts with one another: the Subscription Order,

the Subscription Services Agreement ("SSA"), and the Consulting Services Agreement

("CSA"). [Doc. 1-2, ¶ 7]. Under this arrangement, STIC received a three-year license to

use certain Guidewire products and services. [*Id*.]. The Subscription Order provided

that Guidewire would provide access to certain software to STIC. [Doc. 1-2, pp. 17–35].

The SSA [Doc. 1-2, pp. 36–48] and the CSA [Doc. 1-2, pp. 49–44] facilitated the use of

that software. Both the SSA and the CSA contained alternative dispute resolution

("ADR") clauses. Section 14(a) of the Subscription Services Agreement provides:

> Any and all disputes, controversies or claims arising under or relating to
> this Agreement or the breach, termination or invalidation thereof shall
> upon written notice by either party, be referred to a senior management

representative from each of the parties who will confer in good faith to attempt to resolve the matter. The party sending the first written notice (the "initial notice") shall (l) set forth in detail all of its claims or issues in dispute and (2) designate its representative. The other party shall have 5 business days to designate its representative and add any other issues or claims for resolution not identified in the initial notice. The representatives shall have 30 days from the date of the initial notice to resolve the issues identified in the notices. If the representatives are unable to resolve the matter, either party may refer the matter to administered mediation, through the rules and auspices of the American Arbitration Association in Atlanta, Georgia. Such mediation shall be started within 30 days from the date of referral, and the mediation process must be concluded within 30 days from the start date. The parties shall share equally the mediator's expenses. If the dispute or claim is not fully resolved pursuant to this section, either party may after 90 days, initiate arbitration pursuant to the Georgia Arbitration Act in Atlanta, Georgia. ln the event the parties are unable to resolve any dispute hereunder through informal negotiations or mediation, and except as otherwise provided herein, arbitration pursuant to the Georgia Arbitration Act shall be the exclusive remedy to resolve any disputes between the parties arising in connection with this Agreement and all Orders hereunder. Notwithstanding, either party may apply to a court of competent jurisdiction for injunctive relief in order to protect its rights pursuant to Section 6 hereof before or during arbitration.

[Doc. 1-2, pp. 45–46]. Section 11.5(b) of the Consulting Services Agreement provides:

Any and all disputes, controversies or claims arising under or relating to this Agreement or the breach, termination or invalidation thereof shall upon written notice by either party, be referred to a senior management representative from each of the parties who will confer in good faith to attempt to resolve the matter. The party sending the first written notice (the "initial notice") shall (1) set forth in detail all of its claims or issues in dispute and (2) designate its representative. The other party shall have 5 business days to designate its representative and add any other issues or claims for resolution not identified in the initial notice. The representatives shall have 30 days from the date of the initial notice to resolve the issues identified in the notices. If the representatives are unable to resolve the matter, either party may refer the matter to administered mediation, through the rules and auspices of the American Arbitration Association in

Atlanta, Georgia. Such mediation shall be started within 30 days from the date of referral, and the mediation process must be concluded within 30 days &om the start date. The parties shall share equally the mediator's expenses. If the dispute or claim is not fully resolved pursuant to this section, either party may after 90 days, initiate arbitration pursuant to the Georgia Arbitration Act in Atlanta, Georgia. In the event the parties are unable to resolve any dispute hereunder through informal negotiations or mediation, and except as otherwise provided herein, arbitration pursuant to the Georgia Arbitration Act shall be the exclusive remedy to resolve any disputes between the parties arising in connection with this Agreement and all SOWs hereunder. Notwithstanding, either party may apply to a court of competent jurisdiction for injunctive relief in order to protect its rights hereof before or during arbitration.

[Doc. 1-2, p. 51]. The parties agree that the two ADR provisions are materially similar.

[Doc. 4, p. 3]; [Doc. 11, p. 4]. The provisions provide that disputes between the parties will be resolved in three phases. First, if a party provides notice, appointed representatives from each side will discuss the matter and attempt to resolve it. Next, if discussion by the appointed representatives does not work, either party may refer the matter to mediation. If the dispute is not resolved during the first two steps of the ADR process, the parties agreed that "arbitration pursuant to the Georgia Arbitration Act shall be the exclusive remedy to resolve any disputes between the parties arising in connection with this Agreement." [Doc. 1-2, pp. 46, 51].

A dispute arose between STIC and Guidewire. STIC complains that Guidewire's products and services were riddled with shortcomings. [Doc. 11, p. 3]. Guidewire complains that STIC did not pay them as promised. [Doc. 4, p. 3]. Following an initial notice, both parties appointed a representative to discuss the matter as provided in the

ADR provisions. [Doc. 4, p. 4]. Those representatives could not resolve the dispute, so Guidewire initiated administered mediation with the American Arbitration Association ("AAA"). [Doc. 4, p. 5]. STIC did not participate in the administered mediation. [*Id*.]. Guidewire then commenced arbitration with the AAA. [Doc. 1-2, pp. 81–89]. After that, STIC agreed to participate in the administered mediation and hold the commenced arbitration in abeyance during the mediation. [Doc. 4-3, p. 2]. The mediation was unsuccessful. [Doc. 4, p. 6]. The arbitration proceeding remains pending. [*Id*.].

STIC filed a Petition for Declaratory Judgment and Injunctive Relief to Enjoin Arbitration in the Superior Court of Bibb County, Georgia. [Doc. 1-2, pp. 4–15]. Guidewire then removed that action to this Court [Doc. 1, pp. 1–6] and filed a Motion to Compel Arbitration [Doc. 4].

## DISCUSSION

Congress enacted the Federal Arbitration Act ("FAA") "[t]o overcome judicial resistance to arbitration." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). The FAA declares a "liberal federal policy favoring arbitration agreements." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005). Section 2 of the FAA provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be

> valid, irrevocable, and enforceable, save upon such grounds as exist at law
> or in equity for the revocation of any contract.

9 U.S.C. § 2. Section 3 directs courts to stay proceedings in any case raising a dispute

referrable to arbitration. 9 U.S.C. § 3. And Section 4 allows a court to issue an order

compelling arbitration when parties do not comply with their arbitration agreement. 9

U.S.C. § 4.

"Arbitration is a matter of contract and consent." *JPay, Inc. v. Kobel*, 904 F.3d 923,

928 (11th Cir. 2018). "Arbitrators derive their authority to resolve disputes only because

the parties have agreed in advance to submit such grievances to arbitration." *Id*.

(quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648-49 (1986)).

"Because of the FAA, federal courts are required to place arbitration clauses on equal

footing with other contracts." *Solymar Inv. v. Banco Santander S.A.*, 672 F.3d 981, 988

(11th Cir. 2012). Even so, federal courts must interpret arbitration clauses broadly where

possible. *Id*. (citing *AT&T Techs., Inc. v. Commn'cs Workers of Am.*, 475 U.S. 643, 649-50

(1986)).

The main question here centers on arbitrability—whether the parties contracted

to have the current dispute resolved at arbitration instead of in this Court. To put a finer

point on it, STIC claims that Guidewire abandoned the contracts so that they (the

contracts) are no longer applicable. And, STIC argues, if the contracts no longer require

arbitration, then it doesn't want to arbitrate. So, the key issue can be quickly

summarized: if the case is arbitrable, then the Court must grant the Motion to Compel

Arbitration. If it is not, then the Court must deny the Motion.

But before the Court can consider this critical question, it must consider the

threshold matter of whether arbitrability is itself arbitrable. Put another way, the Court

must determine whether it should answer the question of arbitrability, or instead send

that question to arbitration for the arbitrators to decide.

### A.    "Who" Gets to Decide Arbitrability

The Supreme Court tells us that "the answer to the 'who' question . . . is fairly

simple." *First Options of Chicago v. Kaplan*, 514 U.S. 938, 943 (1995). "Just as the

arbitrability of the merits of a dispute depends upon whether the parties agreed to

arbitrate that dispute, . . . so the question 'who has the primary power to decide

arbitrability' turns upon what the parties agreed about *that* matter." *Id*. "Courts should

not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and

unmistakable' evidence that they did so." *Id*. at 944 (quoting *AT&T Techs.*, 475 U.S. at

649). In other words, the presumption of arbitrability "is reversed" when the contract is

ambiguous or unclear on whether arbitrators should themselves determine arbitrability.

*JPay*, 904 F.3d at 929. Indeed, "questions of arbitrability . . . are presumptively for the

courts." *Id*.

The ADR clauses encompass "[*a*]*ny and all disputes*, controversies or claims *arising*

*under or relating to* this Agreement or the breach, termination or invalidation thereof."

SSA § 14(a); CSA § 11.5(b) (emphasis added). The arbitration portion of the ADR clause provides that "arbitration pursuant to the Georgia Arbitration Act shall be the *exclusive* remedy to resolve *any* disputes between the parties *arising in connection with this Agreement* and all SOWs hereunder." SSA § 14(a); CSA § 11.5(b) (emphasis added). "Any and all disputes," "arising under or relating to," and "any disputes between the parties arising in connection with this Agreement," are broad terms. The Court is tempted to read "any and all disputes" so broad so as to include even a dispute over who gets to decide arbitrability. But Eleventh Circuit precedent shows that this language does not go quite far enough to pass the "clear and unmistakable" test.

In *Jones v. Waffle House, Inc.*, the Eleventh Circuit lists examples of arbitration clause language that do pass the test. 866 F.3d 1257, 1267 (11th Cir. 2017). Language like "any issue *concerning the validity, enforceability, or scope* of this loan or the Arbitration agreement," and "any and all disputes arising out of or in connection with this Agreement, *including any question regarding its existence, validity, or termination*," and "any issue regarding whether *a particular dispute or controversy is . . . subject to arbitration*" constitutes clear and unmistakable evidence that an issue like arbitrability is delegated to the arbitrator. *Id.* (citing *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1148 (11th Cir. 2015); *Martinez v. Carnival Corp.*, 744 F.3d 1240, 1245 (11th Cir. 2014); *In re Checking Account Overdraft Litig.*, 674 F.3d 1252, 1255 (11th Cir. 2012) (emphasis added)).

7

The language used by STIC and Guidewire does not rise to the level of the examples listed in the previous paragraph. Unlike *Parnell*, the clauses here do not clearly specify that they apply to "the validity, enforceability, or scope" of the arbitration agreement. 804 F.3d at 1148. Unlike *Martinez*, the clauses here do not encompass "existence" or "validity." 744 F.3d at 1245. Although the Court is tempted to look at the "any and all" language and say "close enough," close just isn't good enough when it comes to this issue. The standard is "clear and unmistakable."

The Court's conclusion is reinforced by the parties' incorporation of the AAA Rules into only select portions of the ADR clauses. The above-mentioned cases where the Eleventh Circuit found the broad language in the arbitration clauses to be clear and unmistakable evidence of intent to arbitrate arbitrability did not invoke the AAA Rules in the same selective manner as STIC and Guidewire. *See* SSA § 14(a); CSA § 11.5(b). Usually, "when parties incorporate the rules of the [American Arbitration] Association into their contract, they 'clearly and unmistakably agree that the arbitrator should decide whether the arbitration clause applies.'" *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014) (quoting *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005)). But here, the parties only reference the AAA Rules when discussing the terms of administered mediation—not arbitration. *See* SSA § 14(a) and CSA § 11.5(b) ("If the representatives are unable to resolve the matter, either party may refer the matter to administered mediation, through the rules and auspices of

the American Arbitration Association in Atlanta, Georgia."). Later in the clause, when discussing arbitration, the parties only refer to the Georgia Arbitration Act and specifically omit any reference to AAA Rules. SSA 14(a) ("[A]rbitration pursuant to the Georgia Arbitration Act shall be the exclusive remedy to resolve any disputes between the parties arising in connection with this Agreement and all Orders hereunder.").

In cases where courts find that incorporating the AAA Rules in arbitration proceedings also delegates any arbitrability questions to the arbitrator, the contract language makes such a delegation explicit. Consider, for example, the language of the clause at issue in *Archer and White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 277 (5th Cir. 2019) (emphasis added):

> Disputes. This Agreement shall be governed by the laws of the State of North Carolina. Any dispute arising under or related to this Agreement (except for actions seeking injunctive relief and disputes related to trademarks, trade secrets, or other intellectual property of Pelton & Crane), *shall be resolved by binding arbitration in accordance with the arbitration rules of the American Arbitration Association* [ (AAA) ]. The place of arbitration shall be in Charlotte, North Carolina.

Consider, too, the language of the clause at issue in *Fatt Katt Enters. v. Rocksolid Granit (USA), Inc.*: "disputes related to the Agreement 'shall be settled by arbitration in Dade County, Florida before and in accordance with the arbitration rules of Franchise Arbitration and Mediation, Inc. ('FAM') or, if FAM is unable to conduct the arbitration, before the American Arbitration Association ('AAA').'" 1:17-cv-1900-MHC, 2018 WL 482461, at *4 (N.D. Ga. Jan. 11, 2018). In both *Archer* and *Fatt Katt*, the contract explicitly,

or in the language of the Supreme Court, "clearly and unmistakably" provided that the AAA rules would govern the arbitration proceeding itself. But, that is not the case here. In this case, the parties never agreed that any arbitration would be governed by AAA Rules.[1]

STIC and Guidewire's deliberate decision to apply the AAA Rules to administered mediation, but not to arbitration, causes the Court to consider the possibility that the parties took steps to ensure the AAA Rules, including the rule that arbitrators determine their own jurisdiction, would not apply in these contracts. At minimum, this *expressio unius est exclusio alterius*—style argument is enough to make intent to arbitrate arbitrability less than "clear and unmistakable."

In sum, the Court finds that STIC and Guidewire did not "clearly and unmistakably" agree that arbitrability itself would be decided by an arbitrator. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). While the broad language

---

[1] The Court recognizes that the arbitration itself has been initiated and is currently pending before the AAA. *See* [Doc. 4-4, p. 2]. And the Arbitration Complaint contains the heading "Pursuant to the American Arbitration Association Commercial Arbitration Rules." [Doc. 4-1, p. 82]. Further, the demand for arbitration states that "The named claimant, a party to the arbitration agreement which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration." [Doc. 4-1, p. 88]. And Rule 7(a) of the AAA Commercial Arbitration Rules provides that "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AM. ARBITRATION ASS'N, COMMERCIAL ARBITRATION RULES AND MEDICATION PROCEDURES 13 (2013), https://adr.org/sites/default/files/CommercialRules_Web.pdf. Given these facts, the Court recognizes that the arbitration may be governed by the AAA Rules. But the kicker here is what the parties agreed to in their contracts. And the SSA and CSA's ADR clauses are clear that the AAA Rules apply to administered mediation and not arbitration.

used in the ADR clauses makes it a close call on whether STIC and Guidewire "clearly and unmistakably" intended to arbitrate arbitrability, the deliberate decision to apply the AAA Rules to mediation but not to arbitration gives the Court enough pause so that it concludes that it should defer to the presumption that a court determine arbitrability unless the parties clearly intended the arbitrator to do so. *See First Options*, 514 U.S. at 944–45 ("In this manner the law treats silence or ambiguity about the question 'who (primarily) should decide arbitrability' differently from the way it treats silence or ambiguity about the question 'whether a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement'—for in respect to this latter question the law reverses the presumption."(quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)); *JPay*, 904 F.3d at 929 (explaining that questions of arbitrability are "presumptively for the courts").

### B.   Injunctive Relief Language

The Court cannot decide the arbitrability of this dispute until it addresses the injunctive relief language in the SSA and CSA's ADR clauses. STIC argues that the contracts' injunctive relief language allows it to come to court regardless of arbitration. *See* SSA § 14(a) ("Notwithstanding, either party may apply to a court of competent jurisdiction for injunctive relief in order to protect its rights pursuant to Section 6 hereof before or during arbitration.") *and* CSA § 11.5(b)  ("Notwithstanding, either party may

apply to a court of competent jurisdiction for injunctive relief in order to protect its rights hereof before or during arbitration.").

Since arbitration "is a matter of contract and consent," *JPay*, 904 F.3d at 928, the Court must consider what effect, if any, the contracts' injunctive relief language has on the arbitrability of this dispute. First, the CSA's injunctive relief provision, "either party may apply to a court of competent jurisdiction for injunctive relief in order to protect its rights hereof before or during arbitration," is straightforward: a party can seek injunctive relief notwithstanding any ongoing arbitration proceedings. STIC apparently relied on this provision when it sought to enjoin arbitration proceedings. *See* [Doc. 1]. Either party could certainly rely on this part of the contract to support it going to court for an order forcing the other side to honor its obligation to arbitrate. But this particular provision does not carve out or exempt anything from the scope of arbitration proceedings, including the particular dispute Guidewire seeks to resolve in arbitration. STIC complains of shortcomings in the products and services that Guidewire sold it. [Doc. 11, p. 3]. Guidewire complains that STIC owes them money under the contracts. [Doc. 4, p. 3]. Further, in its Statement of Claim & Demand for Arbitration, Guidewire seeks the following relief in arbitration: "(1) a judgment awarding Claimant $1,245,166.53 plus pre and post-judgment interest and any applicable late fees; (2) attorney's fees and arbitration expenses pursuant to O.C.G.A. § 13-1-11 and § 13-6-11; and, (3) any further equitable and legal relief as the arbitrator deems appropriate."

[Doc. 4-1, pp. 82–87]. This is precisely the type of arbitrable dispute contemplated by the parties as evidenced by the language in the contracts: "arbitration pursuant to the Georgia Arbitration Act shall be the *exclusive* remedy to resolve *any* disputes between the parties arising in connection with this Agreement and all Orders hereunder." CSA § 11.5(b) (emphasis added).

Second, the carve out in SSA § 14(a) allows a party to seek injunctive relief to protect its rights pursuant to Section 6 of the SSA. *See* SSA § 14(a). Section 6 of the SSA provides for the nondisclosure of customer data and other confidential information. [Doc. 1-2, pp. 42–43]. This means a party may go straight to court, bypassing the procedures set forth in the ADR clause, to seek injunctive relief when the other party violates Section 6. And, since this dispute doesn't involve Article 6, this section of the SSA doesn't help STIC.

Bottom line: the injunctive relief language in the SSA and CSA does not prevent the Court from compelling STIC and Guidewire to arbitrate a dispute, like this one, that they clearly agreed to arbitrate. The FAA's "national policy favoring arbitration" reinforces the Court's decision. *Preston v. Ferrer*, 552 U.S. 346, 353 (2008). The Georgia Arbitration Code, which the arbitration clauses incorporate as governing the arbitration proceedings, also reflects a "clear public policy in favor of arbitration." *Web IV, LLC v. Samples Constr., LLC*, 349 Ga.App. 607, 609, 349 S.E.2d 107, 110 (2019); SSA 14(a) ("[A]rbitration pursuant to the Georgia Arbitration Act shall be the exclusive remedy to

resolve any disputes between the parties arising in connection with this Agreement.").
To hold otherwise, and allow STIC or Guidewire to come to court to adjudicate a
dispute once their appetite for arbitration subsides, would fly in the face of the FAA's
policy of making arbitration agreements "valid, irrevocable, and enforceable." 9 U.S.C.
§ 2.

     **C.**    <u>**The GAA Procedural Requirements**</u>

     STIC also argues that Guidewire failed to comply with various procedural
requirements mandated by the Georgia Arbitration Act. [Doc. 11, p. 5]. True, the ADR
clauses state clearly that arbitration shall be governed by the Georgia Arbitration Act.
*See* SSA § 14(a); CSA § 11.5(b). Also true, provisions of the Georgia Arbitration Act, such
as O.C.G.A. §§ 9-9-4 and 9-9-6, require certain service and notice requirements that STIC
argues Guidewire did not correctly follow, if at all. But the Supreme Court's decision in
*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84–85 (2002) provides that procedural
"gateway matters," such as those required by O.C.G.A. §§ 9-9-4 and 9-9-6, are
"presumptively *not* for the judge, but for an arbitrator, to decide." (emphasis in
original). Thus, the Court rejects STIC's invitation to weigh in on any alleged failure to
comply with the procedures of the Georgia Arbitration Act as those issues are "gateway
questions" for the arbitrator. *Howsam*, 537 U.S. at 85.

###### D.   **Arbitrability**

We now know the answer to the question of "who" gets to decide arbitrability: this Court. We also know that the contracts' injunctive relief language and STIC's procedural gateway arguments do not prohibit the Court from sending this dispute to arbitration. With those items out of the way, let's move on to the arbitrability analysis.

There is a two-step process required whenever a court considers the arbitrability of any contract containing an arbitration clause. *Solymar*, 672 F.3d at 990. Step one: "resolution of any formation challenge to the contract containing the arbitration clause, in keeping with [*Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287 (2010)]." *Id*. This ensures that "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Id*. (emphasis in original). Step two: "determination of whether any subsequent challenges are to the entire agreement, or to the arbitration clause specifically, in keeping with [*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)]." *Id.*

Step one of the *Solymar* analysis supports sending this dispute to arbitration. Simply put, STIC does not raise "any formation challenge to the contract containing the arbitration clause." *Solymar*, 672 F.3d at 990. STIC argues that the parties "unquestionably rescinded and mutually abandoned" the contracts in February 2019. [Doc. 11, p. 10]. But rescission and abandonment do not relate to the formation of a contract, but instead relate to the termination of an existing contract. The case law STIC

cites in support of its argument supports the rule that courts can only consider challenges to the formation of a contract during this step of the analysis. [*Id*. at pp. 9–10 (quoting *First Options*, 514 U.S. at 944 ("When deciding whether the parties agreed to arbitrate a certain matter . . . , courts generally . . . should apply ordinary state-law principles that govern the *formation* of contracts.") (emphasis added) and *Dale v. Comcast Corp.*, 498 F.3d 1216, 1219 (11th Cir. 2007) ("[G]enerally applicable contract defenses such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements.")]. Because STIC raises no formation challenges, Step 1 does not prevent the Court from granting Guidewire's Motion to Compel Arbitration.

Step two also supports sending this dispute to arbitration. The second step requires a "determination of whether any subsequent challenges are to the entire agreement, or to the arbitration clause specifically, in keeping with [*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)]." *Id. Prima Paint* provides that "courts are the proper forum to evaluate a challenge to the validity of an arbitration clause, but where the entire agreement of which an arbitration clause is but a part is challenged, such evaluation is properly left to the arbitrator." *Solymar*, 672 F.3d at 989 (citing *Prima Paint*, 388 U.S. at 403–04). STIC argues that "the clear language and averments in [STIC's] Petition make it clear that [STIC] is questioning the enforceability of the Arbitration Provisions alone in light of the abandonment of the Ancillary Agreements." [Doc. 11, p. 13]. Seemingly with the *Prima Paint* rule in mind, STIC further argues that it

16

"is not making a distinct claim for abandonment at this juncture, for the purposes to preclude arbitration, instead, [STIC's] Petition specifically asks the Court to determine whether the Arbitration provisions of the Ancillary Agreements are enforceable because abandonment of the Agreements left [STIC] in a state of uncertainty." [*Id*.].

Although STIC tries to package its argument as "only the ADR provisions were abandoned," the reality is that the abandonment argument is directed at the SSA and CSA as a whole. Said another way, what STIC is really arguing is not that the ADR clauses alone were abandoned, but that the SSA and the CSA as a whole were abandoned. STIC's abandonment argument is precisely the type of argument that the Supreme Court in *Prima Paint* held was not appropriate for judicial resolution and should instead be considered by the arbitrator. *See Fatt Katt*, 2018 WL 482461, at *5 ("Plaintiff's arguments are not directed to the delegation provision of the Franchise Agreement. [] Although Plaintiff argues that 'the arbitration provisions are unconscionable,' and claims that it 'does not contend that the entire Franchise Agreement is, in whole, unconscionable,' it is clear that Plaintiff's arguments of substantive and procedural unconscionability are not directed specifically at the delegation provision.").

Further, the Supreme Court's distinction between "validity" and "formation" attacks on a contract containing an arbitration clause cuts against STIC's abandonment argument. In *Buckeye*, 546 U.S. at 443 n. 1, the Supreme Court recognized a distinction

between attacks on a contract's validity and on a contract's formation. The Eleventh Circuit sums up this takeaway from *Buckeye* as follows: "As such, the Court recognized a distinction between challenges to the validity of an agreement containing an arbitration clause, which were reserved for an arbitrator; and challenges to the formation of an agreement containing an arbitration clause . . . ." *Solymar*, 672 F.3d at 989. Even if STIC is correct that the contracts containing the arbitration clauses are abandoned, the Court should still send the case to the arbitrator. The language of the ADR provision supports this. *See* CSA § 11.5(b) ("Any and all disputes, controversies or claims arising under or relating to this Agreement or the breach, *termination or invalidation* thereof . . . .") (emphasis added). Georgia law also supports sending STIC's argument to the arbitrators. *See Perry Golf Course Dev., LLC v. Columbia Residential, LLC*, 337 Ga.App. 525, 530, 786 S.E.2d 565, 569 (2016) ("[T]his Court has held that disputes arising from conduct after the termination of a contract can still be subject to an arbitration clause in the terminated contract. This was based on the fact that because the alleged wrongful conduct 'touched' the contract, the contract's broadly worded arbitration clause was given effect even after termination of the contract.").

The Court does not need to consider the merits of STIC's abandonment claim because it is not an attack on the formation of the contracts but is instead an attack on the validity of the contract as a whole. *See* [Doc. 11, p. 2 ("Simply stated, Southern Trust asserts the parties mutually abandoned and rescinded the Ancillary Agreements, and

the effect of that abandonment on the *Ancillary Agreements as a whole* must be determined.") (emphasis added)].

In sum, because STIC does not attack either the formation of the contract or the arbitration clause itself, the dispute must be adjudicated at arbitration instead of in this Court. *See* 9 U.S.C. § 4 ("The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.").

### E.    Battling Motions

STIC argues that since its Petition for Declaratory Judgment [Doc. 1], which was removed to this Court by Guidewire, was pending before Guidewire filed its Motion to Compel [Doc. 4], the Court should not consider Guidewire's Motion before it considers STIC's Petition. If the Court considers Guidewire's Motion first, STIC argues, it would amount to Guidewire "hijacking" STIC's own request for relief. [Doc. 11, p. 14]. But STIC's request for declaratory relief is aimed at "whether the dispute presently pending in Arbitration is arbitrable." [*Id*. at p. 13]. Since the preceding analysis shows that the dispute is arbitrable, STIC's Petition does not foreclose this Court from granting Guidewire's Motion to send this dispute to arbitration. Said another way, STIC's Petition and Guidewire's Motion present the Court with the same question: is this dispute arbitrable? The Court answers both questions with the same answer: yes.

19

Further, the procedural posture of this case is not unusual. In *Fatt Katt*, for example, the Plaintiff filed a lawsuit seeking a declaration that, among other things, the arbitration provision was unenforceable. 2018 WL 482461, at *2. Later, the Defendant filed a Motion to Compel Arbitration. *Id*. The district court considered the Motion to Compel Arbitration even though the Plaintiff's request for declaratory relief was filed first. *Id*.

## CONCLUSION

Arbitration is a matter of contract and consent. *See JPay*, 904 F.3d at 928. STIC and Guidewire contracted and consented to resolve this dispute at arbitration. Therefore, the Court **GRANTS** Guidewire's Motion to Compel Arbitration [Doc. 4]. It is further **ORDERED** that the case be **STAYED**[2] and **ADMINISTRATIVELY CLOSED** pending the outcome of arbitration proceedings. The parties are **DIRECTED** to notify the Court within fourteen (14) days of the outcome of arbitration if there are any remaining issues for the Court to address.

**SO ORDERED**, this 23rd day of November, 2020.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[2] "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.